IGNACIA S. MORENO
Assistant Attorney General
Environment & Natural Resources Division
KRISTEN L. GUSTAFSON, Assistant Chief
MEREDITH L. FLAX, Sr. Trial Attorney
U.S. Department of Justice
Environment & Natural Resources Division
Wildlife & Marine Resources Section
Ben Franklin Station
P.O. Box 7369
Washington, D.C. 20044-7369
Telephone: (202) 305-0404
Facsimile: (202) 305-0275
E-mail: Meredith.Flax@usdoj.gov

*Attorneys for Federal Defendants*

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF TEXAS
## (San Angelo Division)

| | |
|---|---|
| EXOTIC WILDLIFE ASSOCIATION, *et al.*   ) | |
| ) | MOTION TO DISMISS, OR, |
| Plaintiffs,       ) | ALTERNATIVELY, TO TRANSFER |
| ) | |
| v.                     ) | No. 6:11-cv-00082-C |
| ) | |
| UNITED STATES DEPARTMENT OF   ) | |
| THE INTERIOR, *et al.*        ) | |
| ) | |
| Defendants.        ) | |
| ) | |
| ) | |

1

Plaintiffs Exotic Wildlife Association, et al. ("Plaintiffs" or "EWA") filed this lawsuit on October 24, 2011. Their complaint contains two claims, one Endangered Species Act ("ESA") claim and one Administrative Procedure Act ("APA") claim. Both claims allege that Federal Defendants have violated the law by failing to make timely findings on EWA's petition to delist the U.S. captive-bred populations of the scimitar-horned oryx, the dama gazelle, and the addax (the "Three Antelope species"). The ESA citizen-suit provision requires Plaintiffs to provide Federal Defendants with at least 60 days' notice of their intent to sue over the violation they alleged in their Complaint. However, while Plaintiffs did send Federal Defendants a letter at least 60 days before they filed this suit, the letter is insufficient to satisfy the ESA's 60-day notice requirement because it did not provide notice that Plaintiffs intended to sue over Federal Defendants' alleged failure to timely respond to their petition. Because a proper notice letter is a mandatory prerequisite, and Plaintiffs' letter is deficient, the Court must dismiss Plaintiffs' Complaint.

Alternatively, the Court should exercise its discretion to transfer this case to the U.S. District Court for the District of Columbia to be consolidated with an earlier-filed suit brought by Safari Club International ("SCI") alleging a virtually identical claim for failure to timely respond to its petition to delist the U.S. captive-bred populations of the Three Antelope species. This case could have been brought in D.C., and transferring the case there would further the interests of justice, the convenience of the parties, and judicial economy because there is no reason for two courts to consider similar claims, both concerning similar petitions to delist the Three Antelope species that the Service will respond to concurrently.

For these reasons, as explained more fully below, Federal Defendants respectfully request

that the Court grant their motion to dismiss, or alternatively, to transfer.

## BACKGROUND

I.     STATUTORY BACKGROUND

    A.     Section 4 of the ESA

In 1973, Congress enacted the ESA "to provide a means whereby the ecosystems upon which endangered species and threatened species depend may be conserved, [and] to provide a program for the conservation of such endangered species and threatened species."[1]  16 U.S.C. § 1531(b).  Section 4 directs the Secretary to determine whether a given species should be listed as endangered or threatened.[2]  16 U.S.C. § 1533(a).  Once a species is listed as threatened or endangered, specific protections are accorded that species.  16 U.S.C. §§ 1533, 1536, 1538, 1539.

A species may be added to or removed from the list of threatened and endangered species (i.e., listed or delisted) in one of two ways – either on the initiative of the U.S. Fish and Wildlife Service ("the Service") through the "candidate process," or as a result of a "petition" by an interested person.  At issue in this case is Plaintiffs' June 29, 2010 petition to delist the U.S. captive-bred populations of the Three Antelope species.

Section 4(b)(3)(A) of the ESA provides that an "interested person" may petition the Secretary to add a species to the list of threatened or endangered species or to remove a species

_____

[1] The ESA defines an "endangered" species as "in danger of extinction throughout all or a significant portion of its range," 16 U.S.C. § 1532(6), whereas a "threatened" species is "likely to become an endangered species within the foreseeable future throughout all or a significant portion of its range," *id.* § 1532(20).

[2] The Secretary of the Interior ("Secretary"), acting through the Service, is generally responsible for all terrestrial and freshwater species, including the three antelope species.

from the list.[3]  16 U.S.C. § 1533(b)(3)(A).  The Service is required "[t]o the maximum extent

practicable, within 90 days after receiving the petition of an interested person," to make a finding

as to whether the petition presents "substantial scientific or commercial information" indicating

that the petitioned action may be warranted.  *Id.*  This finding is known as the "90-day" or

substantial information finding, and is published in the Federal Register.  *Id.*  If the Service

determines that the petition presents "substantial scientific or commercial information indicating

that the petitioned action may be warranted," it commences a "review of the status of the species

concerned."  *Id.*  If the Service determines that the petition does not present substantial

information indicating that the petitioned action may be warranted, it makes a "negative

substantial information finding," and the listing process is terminated for that petition.

 If the Service makes a positive 90-day finding for a species, it commences a status review

and then must determine whether the petitioned action is: (1) warranted; (2) not warranted; or (3)

warranted but precluded.  16 U.S.C. § 1533(b)(3)(B).   This is the "12-month" finding.

 B. Section 11 of the ESA

 Primary responsibility for enforcement and implementation of the ESA is entrusted to

officials of the Federal Government.  *See, e.g.*, 16 U.S.C. § 1540(a), (b), and (e)(6).  The ESA

also contains a provision authorizing citizen enforcement suits allowing any person to commence

---

[3] ESA Section 4(a)(1) sets forth five factors that must be considered in a listing or delisting
determination: (1) the present or threatened destruction, modification, or curtailment of its habitat
or range; (2) overutilization for commercial, recreational, scientific, or educational purposes; (3)
disease or predation; (4) the inadequacy of existing regulatory mechanisms; and (5) other natural
or manmade factors affecting its continued existence.  16 U.S.C. § 1533(a)(1); 50 C.F.R. §
424.11(c).  Based on this five-factor analysis, the Service must determine whether a species is
endangered, *i.e.*, in danger of extinction, throughout all or a significant portion of its range, or
likely to become so in the foreseeable future.  16 U.S.C. § 1532(6) and (20).

a civil suit "against the Secretary where there is alleged a failure of the Secretary to perform any act or duty under section 1533 of this title which is not discretionary with the Secretary." 16 U.S.C. § 1540(g)(1)(C). A citizen suit under ESA Section (g)(1)(C) may not be commenced "prior to sixty days after written notice has been given to the Secretary." 16 U.S.C. § 1540(g)(2)(C). The 60-day notice requirement is a mandatory prerequisite to suit. *Hallstrom v. Tillamook County*, 493 U.S. 20, 31 (1989) (notice requirement under similar statute is condition precedent for suit)[4]; *Sierra Club v. Yeutter*, 926 F.2d 429 (5th Cir. 1991) (60-day notice requirement is mandatory condition precedent to ESA citizen suit).

## II.     FACTUAL BACKGROUND

On November 5, 1991, the Service published a proposed rule to list the Three Antelope species as endangered. 56 Fed. Reg. 56,491. The Service re-opened the comment period to request information and comments from the public regarding the proposed rule on June 8, 1992 (57 Fed. Reg. 24,220), and then again on July 24, 2003 (68 Fed. Reg. 43,706), and November 26, 2003 (68 Fed. Reg. 66,395).

On September 2, 2005, the Service issued both a final listing determination, listing the

---

[4] The language of the non-discretionary duty citizen-suit provisions of the Clean Air Act ("CAA"), Clean Water Act ("CWA"), Resource Conservation & Recovery Act ("RCRA"), and the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA") are virtually identical in all material respects to the ESA non-discretionary duty citizen-suit provision. *Compare* ESA, 16 U.S.C. § 1533(g)(1)(C), *with* CWA, 33 U.S.C. § 1365(a)(2); RCRA, 42 U.S.C. § 6972(a)(2); CERCLA, 42 U.S.C. § 9659(a)(2); CAA, 42 U.S.C. § 7604(a)(2). Moreover, the citizen-suit provisions of these various environmental statutes, including that of the ESA, were modeled on the CAA's citizen-suit provision and thus, are all analogous. Accordingly, judicial decisions concerning these other citizen-suit provisions provide persuasive guidance in interpreting the remedy provided in the analogous ESA provision. *See, e.g., Hallstrom*, 493 U.S. at 23 n.1.

Three Antelope species as endangered, and a final rule adding a new regulation authorizing certain otherwise-prohibited activities for U.S. captive-bred individuals of the Three Antelope species ("Management Rule").  70 Fed. Reg. 52,319 and 70 Fed. Reg. 52,310.  Animal rights groups and individuals successfully challenged the Management Rule, which the district court held violated ESA Section 10(c)'s requirement to provide public notice in the Federal Register of each application for a permit allowing take for enhancement of survival of a species.  *Friends of Animals v. Salazar*, 626 F. Supp. 2d 102, 115 (D.D.C. 2009).

The district court remanded the rule to the Service for further proceedings consistent with its opinion.  On July 7, 2011, the Service published a proposed rule to withdraw the Management Rule.  76 Fed. Reg. 39,804.  The Service has not yet issued a final rule.

SCI submitted a petition dated June 28, 2010 to the Service to delist the U.S. captive-bred herds of the Three Antelope species.  Exotic Wildlife Association ("EWA") submitted a similar petition to the Service, dated June 29, 2010.  The Service has not yet completed a 90-day finding on either petition.

SCI provided a letter to the Service, dated June 29, 2011, and received by the Service on July 1, 2011, notifying the Service that, unless corrected, it would file suit to challenge two alleged violations of the ESA and APA:  "(1) the decision to include U.S. captive populations of the scimitar-horned oryx, dama gazelle, and addax in the endangered species listing of the three antelope species on September 2, 2005; and (2) the failure to correct that endangered species listing by removing the U.S. captive herds of the three species after the ruling by Judge Kennedy of the U.S. District Court for the District of Columbia which found federal regulations applicable to those captive populations to be illegal."  SCI Notice Letter (Attached hereto as Exhibit 1).  SCI

subsequently filed suit in the U.S. District Court for the District of Columbia alleging four claims challenging the Service's 2005 listing determination, and a claim challenging the Service's failure to timely respond to SCI's petition.  *Safari Club Int'l v. Salazar*, 11-cv-1564 (D.D.C.).

Plaintiffs provided a letter to the Service, dated June 30, 2011, and received by the Service on July 1, 2011, notifying the Service that, unless corrected, it would file suit to challenge "the following violations of the Endangered Species Act (ESA) and the Administrative Procedures [sic] Act (APA):  (1) the decision to include U.S. captive populations of the scimitar-horned oryx, dama gazelle, and addax in the endangered species listing of the three antelope species on September 2, 2005 and (2) the failure to correct that endangered species listing by removing the U.S. captive herds of the three species after the ruling by Judge Kennedy of the U.S. District Court for the District of Columbia in *Friends of Animals v. Salazar*, No. 04-1660, which held federal regulations applicable to those captive populations 'violated subsection 10(c)' of the ESA."  EWA Notice Letter (Attached hereto as Exhibit 2).  Plaintiffs filed their complaint in this case on October 24, 2011, alleging that the Service violated the ESA and APA by failing to respond to their petition.

## ARGUMENT

I.   **PLAINTIFFS' CLAIMS MUST BE DISMISSED FOR FAILURE TO COMPLY WITH THE MANDATORY 60-DAY NOTICE REQUIREMENT OF THE ESA.**

A.   Standard for Motions to Dismiss for Failure to Comply with Notice Requirement

The Court must dismiss Plaintiffs' claims for relief for failure to comply with the ESA's mandatory 60-day notice requirement.  Each claim is cognizable only under the citizen-suit provision of the ESA, 16 U.S.C. § 1540(g), yet Plaintiffs have failed to meet the mandatory

prerequisite of providing 60 days notice of their intent to sue.  As the Supreme Court has stated, "[i]t is axiomatic that the United States may not be sued without its consent."  *United States v. Mitchell*, 463 U.S. 206, 212 (1983).  Any such consent, the courts have long held, must be strictly construed in favor of sovereign immunity.  *See, e.g., Irwin v. Department of Veterans Affairs*, 498 U.S. 89, 94 (1990).  Thus the consent contained in the citizen-suit provision of the ESA must be strictly construed.

The ESA provides that no suit may be brought "prior to sixty days after written notice of the violation has been given to the Secretary, and to any alleged violator of any such provision or regulation[.]" 16 U.S.C.  §1540(g)(2)(A)(i).  The Fifth Circuit has held that the ESA's 60-day notice requirement is a mandatory condition precedent to commencing suit, which a district court may not disregard at its discretion, though is "not jurisdictional 'in the strict sense of the term.'" *Yeutter*, 926 F.2d at 437; *cf. Southwest Ctr. for Biological Diversity v. U.S. Bureau of Reclamation*, 143 F.3d 515, 520 (9th Cir. 1998) (citations omitted) (holding ESA 60-day notice requirement to be jurisdictional).  If the plaintiff in an ESA suit fails to comply with the notice requirement, the proper remedy is dismissal of the complaint.  *Hallstrom*, 493 U.S. at 33.

In *Hallstrom*, the Supreme Court addressed a similar notice provision of the Resource Conservation and Recovery Act, 42 U.S.C. § 6972(a)(2).  The Court noted that the citizen-suit provisions seek to "strike a balance between encouraging citizen enforcement of environmental regulations and avoiding burdening the federal courts with excessive numbers of citizen suits." *Id.* at 29.  *See also Public Interest Research Grp. v. Hercules, Inc.*, 50 F.3d 1239, 1246 (3d Cir. 1995).  The Court also stated that:

Requiring citizens to comply with the notice and delay requirements serves this

> congressional goal in two ways.  First, notice allows Government agencies to take
> responsibility for enforcing environmental regulations, thus obviating the need for
> citizen suits. . . .  In many cases, an agency may be able to compel compliance
> through administrative action, thus eliminating the need for any access to the
> courts. . . .  Second, notice gives the alleged violator "an opportunity to bring
> itself into complete compliance with the Act and thus likewise render unnecessary
> a citizen suit."

*Hallstrom*, 493 U.S. at 29 (internal citations omitted).  The 60-day notice requirement provides

for a litigation-free window within which the government agency may, if warranted, cure any

alleged violation.  The Supreme Court held that "strict compliance" with the notice provisions

would be required.  *Id.* at 28.   A notice of intent to sue must give notice of the claims and relief

sought; suit broader than the claims in the notice of intent to sue will not be permitted.

*Southwest Ctr. for Biological Diversity*, 143 F.3d at 520-22; *Lone Rock Timber Co. v. U.S. Dep't*

*of Interior*, 842 F. Supp. 433 (D. Or. 1994).

> B.      Plaintiffs Were Required to Provide Sixty Days' Notice Before Bringing Count 1.

Count 1 is subject to the notice requirement of the ESA citizen-suit provision.  Plaintiffs'

first cause of action alleges that "[b]y reason of his failure and refusal to make a 90-day finding,

as required by 16 U.S.C. § 1533(b)(3)(A), and further by reason of his failure to make a 12-

month finding as required by 16 U.S.C. § 1533(b)(3)(B), the Secretary has failed to perform an

act or duty under section 4 of the ESA which is not discretionary with the Secretary."  Compl. ¶

47.

Plaintiffs sent a letter to Defendants more than 60 days before filing this suit.  However,

because Plaintiffs' letter does not assert that Plaintiffs intended to sue the Service for failing to

timely respond to their petition, it can not serve as proper notice for the instant Complaint.

*Southwest Ctr. for Biological Diversity*, 143 F.3d at 521 n.2 (holding that notice provision is

strictly construed and that notice letter must give "notice of the actual violation relied on in issuing the complaint").

On the first page of their letter, Plaintiffs assert that

Unless corrected, EWA will challenge the following violations of the Endangered Species Act (ESA) and the Administrative Procedures [sic] Act (APA):  (1) the decision to include U.S. captive populations of the scimitar-horned oryx, dama gazelle, and addax in the endangered species listing of the three antelope species on September 2, 2005 and (2) the failure to correct that endangered species listing by removing the U.S. captive herds of the three species after the ruling by Judge Kennedy of the U.S. District Court for the District of Columbia in *Friends of Animals v. Salazar*, No. 04-1660, which held federal regulations applicable to those captive populations "violated subsection 10(c) of the ESA.

Letter at 1.  These alleged violations are not the same as the violations Plaintiffs have alleged in their Complaint in this case -- that the Service has violated the ESA and APA by failing to make a 90-day finding on their petition to delist the U.S. captive herds of the three antelope species. Plaintiffs might argue that the second alleged violation suffices here, but they would be wrong. As with their subsequent statement that "FWS should invoke its authority under 50 C.F.R. § 424.11(d) to delist the U.S. captive-bred populations of the Three Antelope species in order to save them from extinction," Letter at 6, the second violation alleged in Plaintiffs' letter suggests that Plaintiffs intend to sue the Service for failing to exercise its inherent authority to change the listing status of the species, not that Plaintiffs intend to sue for failure to make a 90-day finding on their petition.  *See also* Letter at 13 ("To comply with the ESA, therefore, FWS must delist the U.S. captive-bred populations . . . ."); Letter at 21 ("the Secretary should act promptly to delist them – and so save them from decline and possible extinction.")   As explained above, the Service has inherent authority to take a listing action regardless of whether a petition has been submitted, which is different and separate from its obligation to respond to citizen petitions.

10

Therefore, Plaintiffs' statement that it intended to sue the Service unless the Service exercised its inherent authority to initiate a delisting of the U.S. captive-bred populations of the Three Antelope species does not serve as adequate notice of a claim that the Service failed to timely respond to Plaintiffs' petition.

None of the other statements in the letter provide adequate notice either. On page 13 of their letter, Plaintiffs state that "EWA seeks the delisting of the U.S. captive-bred populations of [the three antelope species] under the authority of 16 U.S.C. § 1533(b)(3)(A), 5 U.S.C. § 553(e), and 50 C.F.R. § 424.11(d)(3) . . . ." Letter at 13. A statement that Plaintiffs "seek the delisting" of the Three Antelope species and a citation to the 90-day finding provision is not the same as notifying the agency that Plaintiffs intend to sue for failure to make the 90-day finding. Nor does it provide notice of the actual violation relied on in the Complaint.

Similarly, in the Conclusion on pages 21 to 22 of the letter, Plaintiffs provide a list of the Service's alleged errors in listing the U.S. captive-bred populations of the Three Antelope species. Letter at 21-22. Plaintiffs then state "[t]o compound these errors, FWS failed to reverse its listing decision once Judge Kennedy ruled in *Friends of Animals v. Salazar* against the legality of the special exemption applicable to these U.S. captive-bred herds and further failed to act on EWA's delisting petition." Letter at 22. A general statement that the agency has "failed to act" on their petition is hardly clear notice that Plaintiffs will challenge the Service's failure to make specific findings by specific statutory deadlines. Furthermore, when matched up with the statement on page 1 of the letter, which states that Plaintiffs intended to sue the Service for failing to exercise its inherent authority to initiate a delisting action after Judge Kennedy's decision, the presumption is that, while Plaintiffs are pointing out in this part of the letter that the

Service has not acted on their petition, they intend to sue the Service only for its failure to exercise its inherent authority and not for failing to act on its petition according to a specified timeline.

In sum, Plaintiffs never assert in the letter that they intend to sue the Service for failing to make a 90-day or 12-month finding on their petition.  As such, Plaintiffs' letter fails to satisfy the requirements of the ESA.

      C.      <u>Plaintiffs May Not Evade the Notice Requirement by Bringing an ESA Claim in the Guise of an APA Claim.</u>

In Count 2, Plaintiffs allege that "[b]y reason of his failure and refusal to make a 90-day finding, as required by 16 U.S.C. § 1533(b)(3)(A), and further by reason of his failure to make a 12-month finding as required by 16 U.S.C. § 1533(b)(3)(B), the Secretary has failed to act in accordance with the law, unlawfully withheld agency action, and has unreasonably delayed agency action, all in violation of 5 USC § 706(1)."  Compl. ¶ 52.   Although Count 2 alleges violations of certain sections of the APA, Plaintiffs cannot simultaneously bring the same claim under both the ESA and the APA as a way to escape the 60-day notice requirement.

Because the APA provides for review only of "final agency action for which there is no other adequate remedy in a court," 5 U.S.C. § 704, the Court may not consider Plaintiffs' APA claim where the ESA citizen-suit provision provides an adequate avenue for judicial review.  In other words, "a particular claim may only be brought under either the APA or the ESA–a plaintiff may not cho[o]se her statutory weapon."  *Hawaii County Green Party v. Clinton*, 124 F. Supp. 2d 1173, 1193 (D. Haw. 2000); *Bennett v. Spear*, 520 U.S. 154, 173 (1997); *Home Builders Ass'n of N. California v. U.S. Fish & Wildlife Serv.*, No. Civ. S-05-0629 WBSGGH, 2006 WL

3190518, at *45 (E.D. Cal. Nov. 2, 2006) ("if a claim falls within the scope of the citizen-suit

provision . . . the APA is unavailable and cannot be used to circumvent the ESA's notice

requirements."), *modified on other grounds*, 2007 WL 201248 (E.D. Cal. Jan. 24, 2007).  As the

Supreme Court has stated, "Congress did not intend the general grant of review in the APA to

duplicate existing procedures for review of agency action." *Bowen v. Massachusetts*, 487 U.S.

879, 903 (1988).  *See also Hayes v. Whitman*, 264 F.3d 1017, 1025 (10th Cir. 2001) (holding that

because review of plaintiffs' claim was available under the non-discretionary duty citizen-suit

provision of the Clean Water Act, it was not subject to review under the APA); *Allegheny County*

*Sanitary Auth. v. EPA*, 732 F.2d 1167, 1177 (3d Cir. 1984) (holding that because CWA citizen-

suit provision provided an adequate remedy for the alleged failure to perform a mandatory duty,

"preclusion of the APA remedy is proper");  *American Canoe Ass'n v. EPA*, 30 F. Supp. 2d 908,

927 (E.D. Va. 1998) (in Clean Water Act citizen suit, "the APA does not provide an avenue for

duplicative review when a statute specifically sets out procedures for review of agency action").

     D.    <u>Dismissal Is the Only Proper Remedy</u>.

     Although 60 days have now passed since Plaintiffs sent their notice letter, the Complaint

must still be dismissed.  Because the purpose of the 60-day notice requirement is to provide the

agency with a litigation-free window of time in which it may cure the alleged violation, the

proper remedy for any failure to comply with the notice provision is dismissal, no matter the

stage of the lawsuit.  *Hallstrom*, 493 U.S. at 33.  As the Supreme Court has held, dismissal is

appropriate even after "years of litigation and a determination on the merits."  *Id.* at 32.

Accordingly the proper course here is to dismiss Plaintiffs' Complaint.  If Plaintiffs wish to

reinstate those claims, they must file a new notice letter and complaint.

II.   **ALTERNATIVELY, THE CASE SHOULD BE TRANSFERRED TO THE U.S. DISTRICT COURT FOR THE DISTRICT OF COLUMBIA.**

    A.   <u>Standard for Motions to Transfer</u>

The Court has authority to transfer this case pursuant to 28 U.S.C. § 1404(a).  Section 1404(a) provides:

> For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented.

"The idea behind § 1404(a) is that where a 'civil action' to vindicate a wrong – however brought in a court – presents issues . . . that make one District Court more convenient than another, the trial judge can, after findings, transfer the whole action to the more convenient court." *Continental Grain Co. v. Barge FBL-585*, 364 U.S. 19, 26 (1960).

The decision whether to transfer under Section 1404(a) is committed to the sound discretion of the district court and should be exercised in light of all the circumstances of a case. *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 257 (1981); *Odom v. Microsoft Corp.*, 596 F. Supp. 2d 995, 999 (E.D. Tex. 2009).  Whether venue should be transferred in any given case depends on an "individualized, case-by-case consideration of convenience and fairness."  *Stewart Org. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988) (quoting *Van Dusen v. Barrack*, 376 U.S. 612, 622 (1964), superceded by statute on other grounds, *Ross v. Colorado Outward Bound Sch.*, 822 F.2d 1524 (10th Cir. 1987)).  The only prerequisite to the Court's exercise of discretion is the requirement that the new forum be a district or division where the case "might have been brought."  28 U.S.C. § 1404(a).

"When deciding whether to transfer venue, a district court balances two categories of

14

interests: the private interests, *i.e.*, the convenience of the litigants, and the public interests in the fair and efficient administration of justice." *Odom*, 596 F. Supp. 2d at 999 (citing *In re Volkswagen of America*, 545 F.3d 304, 315 (5th Cir.2008)).  The private interest factors include:

> (1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive.

*In re Volkswagen*, 545 F.3d at 315 (citation omitted).  The public interest factors include:

> (1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws or in the application of foreign law.

*Id.* (citation omitted).

The plaintiff's choice of venue is not a factor in this analysis.  *Id.* at 314–15.  Rather, the plaintiff's choice of venue contributes to the defendant's burden in proving that the transferee venue is "clearly more convenient" than the transferor venue.   *Id.* at 315.

     B.     <u>This Action Could Have Been Brought in the District of Columbia</u>.

The "threshold consideration" for a transfer under Section 1404(a) is whether the action "might have been brought" in the transferee district.  *See, e.g., Van Dusen*, 376 U.S. at 616-17.  Thus, the transferee district must have jurisdiction over the case.  *Hoffman v. Blaski*, 363 U.S. 335, 343 (1960).

Here, assuming for the purposes of this alternative request that the Court determines that Plaintiffs' notice letter is sufficient and thus the Court has jurisdiction, because Plaintiffs have based their claims on federal question jurisdiction, Compl. ¶ 24, both this District and the District of Columbia properly have jurisdiction over these claims.  As such, the relevant question is

whether venue is proper in the transferee district.  Under Section 1391(e), venue is proper in the judicial district where (1) "a defendant in the action resides, (2) a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) the plaintiff resides if no real property is involved in the action."  28 U.S.C. § 1391(e)(1)-(3).  Under these provisions, it is clear that "there may be more than one district in which a claim may be thought to have arisen and in which venue should be proper." 15 Charles A. Wright, Arthur R. Miller, and Edward H. Cooper, Federal Practice and Procedure: Jurisdiction and Related Matters § 3802.1 at 4, 6-7 n.9 (2d ed. 1989 & 2002 Supp.).

Venue is appropriate in the District of Columbia under the first and second provisions of Section 1391(e) because Defendants reside in Washington, D.C., and a substantial part of the events underlying Plaintiffs' claims took place within the District of Columbia.  Since venue may be maintained in the forum to which transfer is sought, this threshold requirement is satisfied.

C.      The Balance of Interests Weighs Strongly in Favor of Transfer to the U.S. District Court for the District of Columbia.

A consideration of the relevant interests strongly favors transfer to the District of Columbia.  Most importantly, the interests of justice strongly weigh in favor of transfer because there is an earlier-filed case in the District Court for the District of Columbia raising virtually the same claim as the one brought in this case.  The principal question at issue in both cases will be the date by which the Service can feasibly complete the findings on the petitions to de-list the Three Antelope species.  It would be a waste of judicial and party resources to litigate that question in two different courts.  To the extent the private and public interest factors come into play, they are neutral or point to transfer.

16

     1.    There is a Related Action Involving Common Issues of Fact and Law
           Pending in the District of Columbia.

Coordination of this case with the related case in the District Court for the District of Columbia involving the 90-day and 12-month findings on very similar petitions to delist the Three Antelope species will serve judicial and party economy by ensuring an efficient resolution that will avoid unnecessary expense and duplication of effort. *Continental Grain Co.*, 364 U.S. at 26 ("[t]o permit a situation in which two cases involving precisely the same issues are simultaneously pending in different District Courts leads to the wastefulness of time, energy and money that § 1404(a) was designed to prevent."); *see also DataTreasury Corp. v. First Data Corp.*, 243 F. Supp. 2d 591, 593-94 (N.D. Tex. 2003) ("Since *Continental Grain*, a number of courts, including the Fifth Circuit, have held that the existence of related litigation in a transferee court is a factor that weighs strongly in favor of transfer.") (citation omitted).

Transferring this case will clearly serve the interests of justice and judicial economy for at least five reasons. First, only one court will have to familiarize itself with the facts and the various statutory mandates at issue. Second, coordinated proceedings will avoid the possibility of conflicting orders and will ensure that all parties are heard in an orderly fashion so that each party is assured that its claims will receive due consideration. The Service intends to respond to both EWA's and SCI's petitions together since they both seek the same listing action and were received a day apart. Souza Declaration ¶ 7 (Attached hereto as Exhibit 3). Third, the timing of the pleadings favors a transfer to the District of Columbia as that case was filed prior to the complaint filed here. *See Biochem Pharma, Inc. v. Emory Univ.*, 148 F. Supp. 2d 11, 13 (D.D.C. 2001) ("When lawsuits involving the same controversy are filed in more than one jurisdiction,

17

the general rule is that the court that first acquired jurisdiction has priority."). Fourth, transferring this action will also serve the public interest by avoiding costs associated with unnecessary duplication of effort. Fifth, the parties have not yet begun briefing in either case and so this is an appropriate time to transfer the case. Clearly, the interests of justice would be served by transferring this case to the District of Columbia.

2.      Private and Public Interest Factors are Neutral or Favor Transfer.

The private interest factors – such as access to sources of proof and witness costs – are neutral in this case because there should be no trial here. Rather, the case is likely to come down to setting a reasonable deadline for the Service to complete the 90-day and 12-month findings on Plaintiffs' petition to delist the U.S. captive populations of the Three Antelope species based on the parties' cross-motions for summary judgment. To the extent any witnesses would be required to testify or any sources of proof needed, the findings at issue will be made by personnel in Washington, D.C., and Arlington, Virginia, a D.C. suburb.

In addition to the factors articulated above, the inconvenience on Plaintiffs will be minimal or nonexistent. This action will likely be decided on the papers without the need for discovery, depositions, witness testimony or trial. Thus, there will be little or no need to travel to Washington, D.C. Even if travel to Washington, D.C., is required, Washington, D.C., is not very inconvenient and, in fact, is where Plaintiffs' main counsel resides. Thus, the convenience of the parties does not militate against transfer.

Regarding the public interest factors, these are either neutral or favor transfer to the District of Columbia. First, transferring this case to be consolidated with SCI's case in D.C. would serve the interest of alleviating administrative difficulties arising from court congestion

because, rather than having two different courts deciding the same issue, transfer would allow one court to do so.  Second, while Plaintiffs may assert that there is a local interest in having this case decided in Texas because most of the U.S. captive members of the Three Antelope species live on ranches in Texas, this factor is actually neutral because the court will not be opining on the merits of whether the Service should delist the U.S. captive populations of these species, merely on whether the Service has unlawfully delayed making such a decision.  In addition, the question is really one of national scope, as there are also populations of the Three Antelope species on ranches, in zoos, and on public land in many other states.  Thus this factor is either neutral or favors transfer to D.C., which often considers questions of national import.  The final factors are also neutral, as neither court has greater familiarity with the law that will govern the case, and there is no need to avoid unnecessary problems of conflict of laws or in the application of foreign law.

## CONCLUSION

The Court must dismiss Plaintiffs' Complaint because Plaintiffs did not satisfy the ESA's mandatory requirement to provide adequate notice to the Service at least 60 days prior to filing suit that they intended to sue the Service for failing to make timely 90-day and 12-month findings on their petition to delist the U.S. captive populations of the Three Antelope species.  Adequate notice is a necessary precondition to filing suit, and the appropriate remedy for failing to provide adequate notice is dismissal.

Alternatively, should the Court find that Plaintiffs provided adequate notice, all of the factors relevant to the consideration of transfer under 28 U.S.C. § 1404(a) support the transfer of this action to the District of Columbia where another highly similar, previously-filed challenge is

pending.  This action could have been brought in the District of Columbia.  The interests of justice strongly favor transfer.  Moreover, the private and public interest factors are neutral or favor transfer.

Accordingly, Federal Defendants respectfully request that the Court dismiss this case or, alternatively, transfer it to the U.S. District Court for the District of Columbia.

Dated:  December 23, 2011

Respectfully submitted,

IGNACIA S. MORENO
Assistant Attorney General
Environment & Natural Resources Division

*/s/ Meredith L. Flax*
MEREDITH L. FLAX
Sr. Trial Attorney (DCB 468016)
U.S. Department of Justice
Environment & Natural Resources Division
Wildlife & Marine Resources Section
Ben Franklin Station
P.O. Box 7369
Washington, D.C. 20044-7369
Telephone: (202) 305-0404
Facsimile:  (202) 305-0275
E-mail:  Meredith.Flax@usdoj.gov

**Attorneys for Federal Defendants**